**UNITED STATES**
**DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **MARTHA C. JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:19-cv-2479** |
| | ) |
| **FRANKLIN TOWNSHIP** | ) |
| **COMMUNITY SCHOOL** | ) |
| **CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

The Plaintiff, Martha C. Johnson ("Ms. Johnson") by her undersigned attorney of record, Stephanie Jane Hahn, for her complaint against the Defendant, Franklin Township Community School Corporation ("Franklin") alleges as follows.

### Nature of the Case

1.     This is an action at law and equity for damages and injunctive relief by the Plaintiff against the Defendant for injury to her person and property due to the wrongful acts and omissions by the Defendant.

2.     The Plaintiff brings this action against the Defendant pursuant to the Americans with Disabilities Act (the ADA) , 42 U.S.C.§ 12101, *et seq.*, as amended, Section 102 of the Civil

1

Rights Act of 1991, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), *et. seq*., as amended by the Civil Rights Act of 1991.

## Jurisdiction

3.     At all times relevant to this action, Ms. Johnson resided in and worked within the Southern District of Indiana.

4.     Defendant is an Indiana corporation that does business within the Southern District of Indiana.

## Parties

5.     The Plaintiff, Ms. Johnson, is a citizen of the United States of America and resides in Greenwood, Indiana.

6.     At all relevant times hereto Ms. Johnson was and is an "employee" within the meaning of the ADA, and Title VII.

7.     The Defendant, at all times relevant hereto, was and is an "employer" within the meaning of the ADA and Title VII.

8.     The alleged unlawful discriminatory practices occurred in Indianapolis, Indiana.

## Administrative Procedures

9.     On or about April 27, 2018, Ms. Johnson timely filed her charges of gender and disability discrimination, and retaliation, against Defendant with the Indianapolis District Office of the Equal Opportunity Commission (the EEOC).

10.     On or about March 13, 2019, the U.S. Department of Justice Civil Rights Division drafted Ms. Johnson's Notice of Right to Sue.

11.    Ms. Johnson's Notice of Right to Sue was mailed on March 18, 2019.

12.    Ms. Johnson's Notice of Right to Sue was only sent to Ms. Johnson's counsel of record and the Defendant, and was received by Ms. Johnson's counsel of record on March 22, 2019.  A copy of the Notice of Rights is attached hereto as Exhibit 1.

13.    This civil action is being initiated within ninety (90) days of Ms. Johnson's receipt of the Dismissal and Notice of Rights.

**<u>Factual Allegations</u>**

14.    Ms. Johnson, a white female, began her career with Franklin in 2008 as Director of Student Services/Special Education.

15.    Ms. Johnson was highly successful as the Director of Student Services/Special Education, which led to more responsibilities over the years.

16.    Ms. Johnson continued to achieve superior results, her evaluations were excellent, and she was promoted to Assistant Superintendent of Curriculum & Instruction and Student Services in 2012.

17.    In 2016, Superintendent Flora Reinchanadter personally asked Ms. Johnson to take over the role of Assistant Superintendent of Human Resources.

18.    Dr. Reinchanadter asked Ms. Johnson to retain the duties and responsibilities of Assistant Superintendent of Student Services, in addition to the new duties and responsibilities that she would have as the Assistant Superintendent of Human Resources, and Ms. Johnson agreed.

19.    Dr. Reinchanadter, is female and resigned near the end of 2016.

20.    Dr. Reinchanadter had complained repeatedly about harassment and

discriminatory treatment by Larry Walker, a white male member of Respondent's Board of Trustees elected in November of 2014.

21.    Dr. Reinchanadter cited abusive and discriminatory treatment by Walker based on her gender as the reason for her resignation in her exit interview with the Defendant.

22.    Dr. Reinchanadter was not the only female discriminatorily targeted by Walker as Walker regularly demonstrated disdain for female members of the Board of Trustees and would often engage in actions to undermine them when they spoke at meetings.

23.    For example, Walker would roll his eyes, ostentatiously turn his back, and make mocking gestures such as pretending to shoot himself in the head when female Board members were speaking at Board meetings.

24.    Walker did not engage in similar antics when male Board members were speaking.

25.    Ms. Johnson went to Interim Superintendent David Shaffer repeatedly to complain on behalf of herself and other women and female employees about Mr. Walker's outrageous and discriminatory conduct at the Board meetings.

26.    But Shaffer took no action.

27.    In June 2017, the Board approved Bruce Hibbard (male) as the new Superintendent, who had previously been the Superintendent for the New Albany Floyd County Schools.

28.    In July 2017, Mr. Hibbard selected Fred McWhorter (male) as Chief Operating Officer, who had been the CFO for New Albany Floyd County Schools when Hibbard was Superintendent.

29.     Contrary to past practices and procedures, Hibbard conducted no interviews for the position and followed no written process as would typically be done when hiring an administrator at this level.

30.     Hibbard prepared McWhorter's contract himself and did not allow Ms. Johnson to see it until the day he presented it to the Board.

31.     To Ms. Johnson's surprise, Hibbard had changed the title from Chief Financial Officer to Chief Operating Officer (although the duties remained the same) for McWhorter, raised the base salary, added a bonus, and included prerequisites that Respondent had never before included in an administrator's contract or in any other cabinet level members contract, such as a rolling term, a $500/month car allowance, modified vesting in retirement accounts, extra vacation days, a higher cell phone allowance than other cabinet level members, and a $10,000 moving allowance.

32.     Ms. Johnson noted these differences and returned the annotated contract to Superintendent Hibbard, explaining that he should be prepared for Board members to question the variances from prior practice, pointed out that Hibbard was providing preferential treatment to McWhorter, and setting him apart from the other two cabinet level members - both of whom were female and one of whom was Ms. Johnson.

33.     Ms. Johnson added that the differences could put the District at risk for discrimination allegations.

34.     Hibbard responded that the Board would be "fine" and added that Larry Walker, a builder and real estate agent, was showing McWhorter houses in the school district.

35.     At the Board meeting, the two female Board members did indeed question

McWhorter's contract, leading to a lengthy discussion.

36.    During this meeting, Walker feigned sleeping when the female Board members questioned the unusual contract.

37.    McWhorter's contract was eventually approved despite at least one of the female board members voting against it.

38.    Shortly thereafter, Hibbard and McWhorter summoned Ms. Johnson to a meeting.

39.    When Ms. Johnson arrived the meeting, Hibbard dramatically held up two books with titles about trust, said he did not know whether he could trust Ms. Johnson, and wanted to know if she was a "team player."

40.    In the following months, Ms. Johnson continued to fulfill her duties to the District as Assistant Superintendent for Human Resources.

41.    As part of these duties, she directed her subordinate, HR Director Jill Britt, to review the Admin Bonuses, told Ms. Britt she was concerned that the bonuses were not being offered or paid in a consistent manner and the inconsistency was resulting in unequal compensation for male and female employees.

42.    Ms. Johnson also voiced her concern about the Admin Bonus and unequal compensation to Mr. McWhorter when she met with he and Britt in November and December 2017 to review contracts for the administration staff.

43.    During her meeting with McWhorter, on November 17, 2107 Ms. Johnson expressed concern about recent inconsistencies with regard to determining who would be eligible for the Admin Bonus and noted that McWhorter himself was an example of such an inconsistency.

44.     Ms. Johnson explained during her meeting with McWhorter that, unlike others eligible for the Admin Bonus, Mr. McWhorter was not required to pay for his own health insurance.

45.     Ms. Johnson pointed out that these disparities could be perceived as discriminatory and present potential liability for the District, but Mr. McWhorter brushed her off, saying that they would stick with the contracts as they were and look at disparities later.

46.     The Board of Trustees met in a closed executive session on or about December 18, 2017 to review administration contracts.

47.     During the December 18, 2017 meeting, Superintendent Hibbard identified three administrators and two teachers in administrative positions, whose contracts he recommended not be renewed.

48.     All five contracts were for female employees and Ms. Johnson was one of the five.

49.     During the meeting, the pretextual reasons Hibbard gave for the non-renewal of Ms. Johnson's contract were that he had decided to "reorganize," and was "re-titling" Ms. Johnson's position.

50.     Hibbard noted during the meeting that Ms. Johnson had a good reputation and was trusted by staff and parents and opined that the best approach would be to get Ms. Johnson to resign.

51.     Hibbard indicated during the meeting that he had already identified the individual to fill Ms. Johnson's position – Kevin Pettet (male).

52.     Ms. Johnson had never been given any indication that her performance was

7

lacking in any way and her performance evaluations were excellent.

53.     Ms. Johnson had enjoyed good relationships with the administration and parents and had over ten years of highly successful central office administration experience.

54.     In comparison, Kevin Pettet had no central office administration experience, no Human Resources experience, and had been with Franklin Township Community School Corporation for only about a year.

55.     Ms. Johnson was so shocked by Hibbard's decision that she became physically ill.

56.     Despite feeling ill, Ms. Johnson went to work on December 19 and 20 expecting Hibbard would meet with her to explain his decision but he did not.

57.     By December 21, Ms. Johnson was so ill that she had to seek medical treatment and remained off work December 22, 27 and 28 (December 25 and 26 were District holidays).

58.     On December 28, 2017, McWhorter and Ms. Britt, telephoned Ms. Johnson and read to Ms. Johnson from a letter that stated she was being placed on Administrative Leave, which is the procedure for an employee when there are allegations of egregious misconduct – not for a contract non-renewal of a long-time administrator being replaced in a "reorganization."

59.     Ms. Johnson, a single mother, asked what she had done to be placed on administrative leave and McWhorter responded that Ms. Johnson had done "nothing wrong," which led her to ask again why she was being placed on administrative leave - to which there was silence on the phone.

60.     Ms. Britt then told Ms. Johnson that police officers would come to her house to collect her keys, badge, credit card, and lap top and deliver copies of the letter and a "settlement agreement."

61.    Ms. Britt then ordered Ms. Johnson not to speak with <u>anyone</u> about her administrative leave or the matters they had discussed on the call.

62.    School police subsequently arrived at Ms. Johnson's house in a marked police car to deliver the documents and pick up Ms. Johnson's keys, badge, credit card, and lap top.

63.    Three weeks later, another marked police car arrived at Ms. Johnson's home, but this time the Chief of Police for Franklin Community School Corporation delivered a letter stating that the Board of Trustees was considering a decision to not renew Ms. Johnson's contract due to "administrative leadership reorganization."

64.    The Board of Trustees approved the hiring of several administrators, including Kevin Pettet, on or about January 17, 2018.

65.    Mr. Walker posted the approvals on the District's Facebook page and subsequently shared the District's Facebook Posting or Page on his own Facebook page.

66.    Walker added a comment on his own Facebook post that Pettet was a "good family man."

67.    Under Indiana Code 20-28-8-4, Ms. Johnson was entitled to a conference with the Superintendent to discuss the non-renewal of her contract.

68.    On January 30, 2018 when Ms. Johnson arrived for the private conference, she found Kevin Pettet in attendance for her private meeting with the Superintendent.

69.    Ms. Johnson reminded Hibbard and Pettet that she was entitled to a private meeting with the Superintendent.

70.    Hibbard responded that Mr. Pettet was there to "protect the District," which prompted Ms. Johnson to ask what Pettet was protecting the District from and suggested they

9

confirm with the District's legal counsel that she was entitled to a private meeting.

71.    Ms. Johnson said that she would return for her private meeting with the Superintendent at a later date but Hibbard relented and instructed Pettet to leave.

72.    During her private meeting with the Superintendent, in response to Ms. Johnson's questions about the reason her contract was not renewed, Hibbard gave different versions of the same vague and noncommittal answer – that he reorganized and chose administrators who would "move the District forward."

73.    Ms. Johnson pointed out that these responses lacked substance and failed to explain the reason for her mid-year demotion and the district's decision not to renew her contract as Assistant Superintendent of Human Resources for the next year but Hibbard would not elaborate and simply kept repeating the same vague, nonspecific statements.

74.    Ms. Johnson pointed out that, under Hibbard's alleged "reorganization," the District was now paying a man to do half the job she had been performing, and that Hibbard simply changed the title to support the subterfuge that it was a "reorganization."

75.    Hibbard sat and said nothing for a long time before mechanically restating that Pettet and the other new administrators would "move the District forward."

76.    Ms. Johnson also asked during her meeting with the Superintendent why he had not conveyed his decision to her himself.

77.    Ms. Johnson said it was unprofessional to have Britt and McWhorter convey the decision since Britt was her subordinate and McWhorter was the very person whose compensation package she had asserted was out of line with other administrators and discriminatory.

78.     As soon as Ms. Johnson mentioned McWhorter's name, Mr. Hibbard stared at her and smiled slowly, which indicated that she had hit the nail on the head, that he had retaliated against her for her complaints of discrimination, and beaten her by terminating her administrative contract and demoting her.

79.     Following the meeting with Hibbard, Ms. Johnson chose to exercise her right under Indiana law to have a conference with the Board of Trustees which took place on February 14, 2018.

80.     Respondent's attorney attended the meeting and refused to allow Ms. Johnson to ask any questions about the reason for the decision not to renew her contract.

81.     During this meeting, Ms. Johnson stated her allegations of discrimination and retaliation and set out the facts that supported those allegations.

82.     The Board members said nothing and asked no questions of Ms. Johnson.

83.     Ms. Johnson still had a teaching contract that Respondent was required to honor even though it had not renewed her administrator contract.

84.     Subsequent to her meeting with the Superintendent and the Board wherein she had made her complaints of discrimination and retaliation, Ms. Johnson communicated and met with Britt and Pettet on numerous occasions regarding her teaching assignment.

85.     At first, they told her she would be assigned to a Special Education Life Skills Teaching position at the High School, even though she had a broken arm and was wearing a brace, making it quite obvious that she would be unable to perform the duties of this position.

86.     Although there were other positions available, Ms. Britt did not disclose or consider Ms. Johnson for any of these other positions and told her she would have to take FMLA

if she was unable to perform the duties of the Special Education Life Skills position.

87.     Ms. Johnson did not want to take FMLA leave, as there were open positions for which she was qualified, and/or reasonable accommodations that the Defendant could and should provide, so she continued to press Ms. Britt to identify other open positions.

88.     When Britt did eventually identify other positions, she would not tell Ms. Johnson the details about these positions, such as grade level and location.

89.     It was only after Ms. Johnson complained about disability discrimination and repeatedly advised the district that it had to engage in the "interactive process" to provide her with accommodations that it finally relented and did so.

90.     In response to Ms. Johnson's repeated inquiries about open administration positions, Ms. Britt stated via email on February 21, 2018 that Ms. Johnson would not be considered for an administration position because of "concerns within the school community going back to the fall and prior about [Ms. Johnson's] leadership skills and reliability in a management role."

91.     At no point prior to Ms. Britt's email of February 21, 2018, had Ms. Johnson ever been told of any such concerns and, in fact, had been repeatedly told that she had done "nothing wrong" and the only reason she was removed from her administration position was a "reorganization."

92.     Defendant's shifting reasons further support that its stated reason for taking adverse action against Ms. Johnson is merely a pretext for its true discriminatory and/or retaliatory motive.

93.     Because salary information and copies of contracts for administrators of public

12

schools are public records under Indiana law, Ms. Johnson asked repeatedly for this information

regarding the newly hired administrators, including her replacement, but Respondent refused to

provide it for months and failed to post it publicly as required by law.

94.     Moreover, despite Ms. Johnson's repeated requests, the district refused to advise

her what her salary would be for the next school year.

95.     It was only after several emails and emails to the Superintendent and the Board

President that the District bothered to respond to her inquiries.

96.     Ms. Johnson alleges Respondent discriminated against her based on her sex in

violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

97.     She further alleges that Respondent retaliated against her in violation of Title VII

for protesting disparate treatment of herself, other female employees, and female Board

members.

98.     Ms. Johnson also alleges that Respondent discriminated and retaliated against

her in violation of the ADA by initially failing to accommodate her disability, refusing to engage

in the interactive process, and setting her teaching assignment.

99.     Despite Ms. Johnson's complaints of discrimination and retaliation, Defendant

took no action to properly investigate her allegations or stop the discrimination and retaliation

that Ms. Johnson was subjected to by Defendant.

100.    Franklin took no remedial action to remedy the discrimination and retaliation

that Ms. Johnson was subjected to by Defendant and the discrimination and retaliation are

ongoing.

101.    Ms. Johnson, at all times relevant hereto, met or exceeded Defendant's

"legitimate" employment expectations.

102.    But for Ms. Johnson's gender, and/or her complaints of disparate treatment, she would not have had her administrative contract terminated and been demoted.

103.    But for Ms. Johnson's gender, and/or her complaints of disparate treatment, she would have been considered for administrative positions after the district's "reorganization."

104.    But for Ms. Johnson's disability, and/or her requests for accommodations concerning the same, she would have been considered for administrative positions after her contract was terminated and she had been demoted.

105.    But for Ms. Johnson's gender she would not have been placed on administrative leave.

106.    But for Ms. Johnson's complaints of discrimination she would not have been placed on administrative leave.

107.    But for Ms. Johnson's gender she would have been notified of all jobs and the terms and conditions of each position, for which she was qualified after the termination of her administrative contract.

108.    But for Ms. Johnson's complaints of discrimination she would have been notified of all jobs and the terms and conditions of each position, for which she was qualified after the termination of her administrative contract.

109.    As a result of Franklin's unlawful employment practices, Ms. Johnson has incurred lost wages and benefits.

110.    As a result of Franklin's unlawful employment practices, Ms. Johnson has suffered and continues to suffer emotional distress and mental anguish.

111.    Franklin's unlawful employment practices were intentional.

112.    Franklin's unlawful employment practices were done with malicious or reckless indifference to Ms. Johnson's legal rights.

113.    Franklin willfully violated Ms. Johnson's legal rights.

114.    Ms. Johnson is entitled to recover reasonable attorney's fees and costs.

## Count I

**(Title VII - Gender Discrimination, 42 U.S.C.  §2000(e), *et. seq*. - Disparate Pay and Benefits)**

115.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

116.    Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of Title VII by failing to pay her and provide her the same level of pay and benefits as a similarly situated male.

117.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

118.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count II

**(Title VII - Gender Discrimination, 42 U.S.C.  §2000(e), *et. seq*. - Retaliation/Disparate Pay and Benefits)**

119.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

15

120.    Defendant retaliated against Ms. Johnson for her complaints of discrimination in violation of the Title VII by failing to pay her and provide her the same level of pay and benefits as a similarly situated male on the cabinet level.

121.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

122.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count III

**(Title VII - Gender Discrimination, 42 U.S.C. §2000(e), *et. seq*. - Administrative Leave)**

123.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

124.    Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of Title VII by placing her on administrative leave.

125.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

126.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count IV

**(Title VII - Gender Discrimination, 42 U.S.C. §2000(e), *et. seq*. - Retaliation Administrative Leave)**

127.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

128.    Defendant retaliated against Ms. Johnson for her complaints of discrimination in violation of the Title VII by placing her on administrative leave.

129.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

130.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count V

**(Title VII - Gender Discrimination, 42 U.S.C. §2000(e), *et. seq*. - Termination of Contract/Demotion)**

131.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

132.    Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of Title VII by terminating her administrator's contract and demoting her to teacher.

133.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

134.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count VI

**(Title VII - Gender Discrimination, 42 U.S.C. §2000(e), *et. seq*. - Retaliation Termination of Administrative Contract/Demotion)**

135.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

136.    Defendant retaliated against Ms. Johnson for her complaints of discrimination in violation of the Title VII by terminating her administrator's contract and demoting her to teacher.

137.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

138.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count VII

**(Title VII - Gender Discrimination, 42 U.S.C.  §2000(e), *et. seq*. - Refusal to Consider for Administrative Positions)**

139.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

140.    Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of Title VII by refusing to consider her for any administrator's positions after its "reorganization."

141.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

142.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count VIII

**(Title VII - Gender Discrimination, 42 U.S.C.  §2000(e), *et. seq*. - Retaliation/Refusal to Consider for Administrative Positions)**

143.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one

hundred and fourteen (114) above.

144.    Defendant retaliated against Ms. Johnson for her complaints of discrimination in violation of the Title VII by refusing to consider her for any administrator's positions after its "reorganization."

145.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

146.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count IX

**(Title VII - Gender Discrimination, 42 U.S.C.  §2000(e), *et. seq*. - Failure to Investigate)**

147.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

148.    Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of Title VII by failing to investigate her complaints of discrimination and/or retaliation.

149.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

150.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count X

**(Title VII - Gender Discrimination, 42 U.S.C.  §2000(e), *et. seq*. - Retaliation/Failure to Investigate)**

151.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one

hundred and fourteen (114) above.

152.    Defendant retaliated against Ms. Johnson for her complaints of discrimination in violation of the Title VII by failing to investigate her complaints of discrimination and/or retaliation.

153.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

154.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count XI

**(Title VII - Gender Discrimination, 42 U.S.C. §2000(e), *et. seq*. - Refusal to Disclose Otherwise Public Salary Information)**

155.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

156.    Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of Title VII by refusing to timely disclose otherwise public salary information about its administrators, and more specifically, Ms. Johnson's male replacement.

157.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

158.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count XII

**(Title VII - Gender Discrimination, 42 U.S.C. §2000(e), *et. seq*. - Retaliation/Refusal to**

**Disclose Otherwise Public Salary Information)**

159.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

160.    Defendant retaliated against Ms. Johnson for her complaints of discrimination in violation of the Title VII by refusing to timely disclose otherwise public salary information about its administrators, and more specifically, Ms. Johnson's male replacement.

161.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

162.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count XIII

**(Title VII - Gender Discrimination, 42 U.S.C. §2000(e), *et. seq*. - Ordered Not to Discuss Discrimination or Retaliation with Anyone)**

163.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

164.    Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of Title VII by ordering her not to discuss her discriminatory and retaliatory placement on administrative leave with anyone.

165.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

166.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count XIV

### (Title VII - Gender Discrimination, 42 U.S.C.  §2000(e), *et. seq*. - Retaliation/Ordered Not to Discuss Discrimination or Retaliation with Anyone)

167.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

168.    Defendant retaliated against Ms. Johnson for her complaints of discrimination in violation of the Title VII by ordering her not to discuss her discriminatory and retaliatory placement on administrative leave with anyone.

169.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

170.    As a result of Defendant's retaliatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count XV

### (The Americans with Disabilities Act - Refusal to Accommodate)

171.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

172.    Ms. Johnson suffered or suffers from health issues and physical impairments that affect one or more major life activities.

173.    Defendant knew Ms. Johnson had such physical health issues and impairments.

174.    Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of the ADA by refusing to accommodate her disability.

175.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained

economic injury in lost earnings, lost earning potential and lost benefits.

176.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count XVI

### (The Americans with Disabilities Act - Refusal to Engage in Interactive Process)

177.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

178.    Ms. Johnson suffered or suffers from health issues and physical impairments that affect one or more major life activities.

179.    Defendant knew Ms. Johnson had such physical health issues and impairments.

180.    Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of the ADA by refusing to engage in the interactive process and to place her in a teaching position that accommodated her disability.

181.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

182.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count XVII

### (The Americans with Disabilities Act - Discrimination/Refusal to Consider for Administrative Positions)

183.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one

hundred and fourteen (114) above.

184.    Ms. Johnson suffers from health issues and physical impairments that affect one or more major life activities.

185.    Defendant knew Ms. Johnson had such physical health issues and impairments.

186.    Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of the ADA by refusing to consider her for an administrative position because she complained of discrimination and requested reasonable accommodations.

187.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

188.    As a result of Community's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count XVIII

### (The Americans with Disabilities Act - Retaliation/Refusal to Consider for Administrative Positions)

189.    Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

190.    Ms. Johnson suffers from health issues and physical impairments that affect one or more major life activities.

191.    Defendant knew Ms. Johnson had such physical health issues and impairments.

192.    Defendant knowingly and intentionally retaliated against Ms. Johnson in violation of the ADA by refusing to consider her for an administrative position because she complained of discrimination and requested reasonable accommodations.

24

193.   As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

194.   As a result of Community's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count IXX

### (The Americans with Disabilities Act - Discrimination/Failure to Investigate)

195.   Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

196.   Ms. Johnson suffers from health issues and physical impairments that affect one or more major life activities.

197.   Defendant knew Ms. Johnson had such physical health issues and impairments.

198.   Defendant knowingly and intentionally discriminated against Ms. Johnson in violation of the ADA by refusing to investigate and/or remedy her complaints of discrimination.

199.   As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

200.   As a result of Community's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Count XX

### (The Americans with Disabilities Act - Retaliation/Failure to Investigate)

201.   Ms. Johnson incorporates the allegations of paragraphs one (1) through one hundred and fourteen (114) above.

202.   Ms. Johnson suffers from health issues and physical impairments that affect one

or more major life activities.

203.    Defendant knew Ms. Johnson had such physical health issues and impairments.

204.    Defendant knowingly and intentionally retaliated against Ms. Johnson in violation of the ADA by refusing to investigate and/or remedy her complaints of discrimination.

205.    As a result of Defendant's discriminatory practices, Ms. Johnson has sustained economic injury in lost earnings, lost earning potential and lost benefits.

206.    As a result of Community's discriminatory practices, Ms. Johnson has sustained emotional injury and pain and suffering.

## Relief

**WHEREFORE,** the Plaintiff, Ms. Johnson, by her undersigned counsel, respectfully seeks the following relief from this Court:

A.    Requiring Franklin to reinstate her to the full-time administrative position she held prior to the termination of her contract and demotion;

B.    Awarding all lost wages and other employment-related benefits, including, but not limited to, the value of all lost insurance benefits, pension benefits, as well as diminution of social security benefits that Ms. Johnson has sustained or will sustain as a result of Franklin's conduct;

C.    Awarding front pay in an amount equal to the wages  and employment-related benefits Ms. Johnson may reasonably be expected to lose after trial as a result of Franklin's unlawful conduct should the Court determine that an order requiring Franklin to reinstate Ms. Johnson to her former position not be feasible or appropriate;

D.      Awarding prejudgment interest;

E.      Awarding compensatory damages in an amount to be determined by a jury to

make Ms. Johnson whole for the mental anguish, emotional distress and other

non-pecuniary damages she has suffered because of Franklin's unlawful conduct;

F.      Awarding punitive damages in an amount to be determined by a jury to punish

community for its unlawful conduct which was malicious or undertaken with

reckless indifference to Ms. Johnson's rights and to deter others from similar

conduct;

G.      Awarding liquidated damages to the extent permitted by law;

H.      Awarding the costs of maintaining this action, including an award of reasonable

attorney's fees; and

I.      Awarding all other relief proper in the premises.

**Date:**  19 June 2019.

Respectfully Submitted By,


 *S/Stephanie Jane Hahn*
Stephanie Jane Hahn
Attorney No. 18674-64
Attorney for the Plaintiff


**STEPHANIE JANE HAHN**
**Attorney at Law**
3815 River Crossing Parkway, Suite 100
Indianapolis, Indiana 46240
Telephone: 317.569.2323
Facsimile: 317.816.7001
E-mail: Attorney4workers@aol.com

## REQUEST FOR JURY TRIAL

The Plaintiff, Martha C. Johnson, by her undersigned counsel, respectfully requests

trial by jury on all issues triable by right to a jury.

**Date:**   19 June 2019.

Respectfully Submitted By,

*S/Stephanie Jane Hahn*
Stephanie Jane Hahn
Attorney No. 18674-64
Attorney for the Plaintiff

**STEPHANIE JANE HAHN**
**Attorney at Law**
3815 River Crossing Parkway, Suite 100
Indianapolis, Indiana 46240
Telephone: 317.569.2323
Facsimile: 317.816.7001
E-mail: Attorney4workers@aol.com