UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARTHA C. JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FRANKLIN TOWNSHIP COMMUNITY )<br>SCHOOL CORPORATION, )<br>)<br>Defendant. ) | No. 1:19-cv-02479-JRS-MPB |

**Entry and Order on Motion for Summary Judgment**

Plaintiff Martha C. Johnson sued her employer, Defendant Franklin Township Community School Corporation (the "School"), alleging that the School discriminated against her based on her sex and retaliated against her for complaining in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.* Johnson also alleged that the School failed to accommodate her disability, refused to engage in the interactive process, and retaliated against her, all in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.* The School moves for summary judgment. Johnson opposes the motion. The Court finds that summary judgment should be granted the School on all claims against it.

## I. Background Facts

In July 2017, Bruce Hibbard became Superintendent of the Franklin Township Community Schools. (Hibbard Aff. ¶ 2, ECF No. 97-1.) The interim superintendent who preceded Hibbard provided the School Board with an exit report, recommending

that the new superintendent analyze structural and personnel issues and make a change through which student issues were no longer handled by Assistant Superintendent of Personnel Martha C. Johnson. (Hibbard Aff. ¶ 3.) Hibbard observed and, analyzed structural and personnel issues and, as a result, made changes he found appropriate, including removing Johnson from her administrative position. (*Id.* ¶ 4.)

Hibbard had received consistent feedback that Johnson was incompetent, unapproachable, a poor communicator, and failed to return phone calls or emails. (*Id.* ¶ 5; *id.* ¶ 10 (Lynlie Schoene, a school principal, reported to Hibbard concerns about Johnson failing to return phone calls and not being responsive in a timely manner).) He became aware that Johnson did not get along well with other people and was a source of conflict and that the organization was in serious need of reorganization. (*Id.* ¶ 5.) School principals informed Hibbard that they did not trust Johnson, which caused him concern. (*Id.* ¶ 6.) Principals also complained about Johnson's performance, informing Hibbard that she did not appear to know what she was doing, she failed to provide the support and assistance needed from her, and she either did not have answers to the principals' questions or when she did have answers, they were untimely. (Hibbard Aff. ¶ 10 (report of Lynlie Schoene); *id.* ¶¶ 12–13 (report of Kevin Koers); *id.* ¶ 14 (report of Kent Pettet).) Hibbard also received feedback that teachers neither liked nor trusted Johnson and viewed her as incompetent, particularly in her curriculum role. (*Id.* ¶ 6; *see also id.* ¶ 10 (Patricia Blazek

2

complained to Hibbard that Johnson did not know what she was doing and that Blazek had to do some of Johnson's job tasks).)

The assistant to the superintendent reported to Hibbard that Johnson "doesn't play well in the sandbox" and that it appeared from the reaction of others that "Johnson did not get along well with others." (Hibbard Aff. ¶ 7.) One school counselor who left her employment with the School in July 2017 similarly complained about Johnson's failings, including a repeated failure to respond or acknowledge communication about student issues, a demonstrated lack of understanding of the school counselor's role, failure as a leader, and failure to attend meetings. (*Id.* ¶ 11.)

Based on the substantial amount of criticism of Johnson and Hibbard's own interactions with her, Hibbard decided that including Johnson on the central office administrative team would be neither functional nor helpful to the School. (Hibbard Aff. ¶ 15.) Hibbard's observations and interactions with Johnson confirmed the negative reports he received from staff. He believed that Johnson's reputation was consistent with a culture of "no" at the central office, meaning that when a building level staff person needed support and came to the central office, the answer was nearly always "no." (*Id.* ¶ 16.) In addition to the negative feedback from others, Hibbard observed that Johnson attempted to undermine him and the new Chief Operating Officer ("COO") for the School and engaged in inappropriate behavior. (*Id.* ¶¶ 19–23.) For example, Johnson sent a coworker a defamatory text about the COO, which raised "serious concerns" in Hibbard's mind about whether he could trust" Johnson. (*Id.* ¶¶ 20–21.) In sum, based on his first-hand observations of Johnson's

3

poor performance, the substantial negative feedback about her, and having learned that neither the central office administrators, principals, nor teachers respected or trusted Johnson, Hibbard decided not to include her on his central office administrative team. (Hibbard Aff. ¶¶ 24–25.)

On December 18, 2017, Hibbard proposed to the School Board an organizational restructuring, including removing Johnson from her administrative position. (*Id.* ¶ 25.) The Board did not ask Hibbard for the reasons for his reorganization personnel decisions, and he did not disclose his reasons to the Board. (*Id.* ¶ 27; *see also* Dawn Downer Dep. 108 (stating that the Board was not told why Johnson was not considered for any administrative positions and was told only that Hibbard wanted his own cabinet), ECF No. 97-17.) The Board unanimously voted to approve the reorganization, including giving Hibbard authority to offer Johnson a severance and not renew her administrative contract. (Hibbard Aff. ¶ 27.) Hibbard alone made the reorganization decisions. (*Id.* ¶ 28.) As a result of Hibbard's reorganization, eight women and three men were promoted, and seven women and two men received pay raises. (*Id.*; Jill Britt Aff. ¶ 5, ECF No. 97-5.)

Having made the decision to remove Johnson from the central office, Hibbard offered her a severance payment and placed her on administrative leave so she could consider the severance. (Hibbard Aff. ¶ 32.) Johnson declined the severance, she received her administrator pay and benefits through the end of her administrative contract on June 30, 2018, and she was reassigned to a teaching position. (*Id.* ¶ 38.)

4

Since Johnson declined the severance, the School worked with her to find an acceptable teaching position. (Britt Aff. ¶ 7, 9.) In early February 2018, Johnson was offered a special education position at the high school, which she initially declined due to a broken arm. (*Id.* ¶ 9.) A few days later, the School sent Johnson FMLA paperwork, and a few weeks after that, the School sent her ADA accommodation paperwork. (*Id.*) Johnson never returned any of the paperwork. (*Id.*) The School followed-up with Johnson, directing her to return to work and attempting to work with her to find an open position that would meet her needs given her broken arm. (*Id.* ¶¶ 9–13.) Johnson ultimately accepted the special education teacher position initially offered, and she admits that the School accommodated her restrictions and granted her placement request. (Johnson Dep. 85–86, ECF No. 97-16.) She remains employed with the School as a teacher. (Hibbard Aff. ¶¶ 9, 12, 41.)

## II. Discussion

Johnson alleges sex and disability discrimination and retaliation by her employer, the School in violation of Title VII and the ADA. Johnson claims that the School discriminated and retaliated against her by placing her on administrative leave, removing her from her position as Assistant Superintendent, and refusing to renew her administrator's contract. She alleges that after she requested a reasonable accommodation for a disability and complained about discrimination and retaliation, the School refused to offer her a reasonable accommodation. Johnson also brought a disability discrimination claim as well as a claim related to a public records request, but in failing to oppose summary judgment as to these claims, she has abandoned

them. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (holding plaintiffs waived claims where they failed to respond to the defendant's arguments and "did not provide the district court with any basis to decide" them). The School seeks summary judgment on all claims.

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. *FKFJ, Inc. v. Village of Worth*, 11 F. 4th 574, 584 (7th Cir. 2021). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is "material" if the fact "might affect the outcome of the suit under the governing law." *FKFJ, Inc.*, 11 F.4th at 584 (quoting *Anderson*, 477 U.S. at 248). Hence, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson*, 477 U.S. at 247–48).

The Court draws all reasonable inferences in favor of the non-moving party, but it "need not draw 'every conceivable inference,'" in that party's favor. *FKFJ, Inc.*, 11 F.4th at 585 (quotation omitted). Mere speculation, conjecture, and conclusory allegations are insufficient to defeat a summary judgment motion. *Id.*; *Igasaki v. Illinois Dep't of Fin. & Pro. Reg.*, 988 F.3d 948, 956 (7th Cir. 2021). "When the non-moving party fails to establish 'the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial,' Rule 56(c) mandates entry of summary judgment against that party because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### B. Sex Discrimination

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In a discrimination case at summary judgment, the "singular question" is whether the evidence "would 'permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Igasaki v. Illinois Dep't of Fin. & Pro. Reg.*, 988 F.3d 948, 957 (7th Cir. 2021) (quoting *Purtue v. Wisconsin Dep't of Corrs.*, 963 F.3d 598, 602 (7th Cir. 2020), *reh'g denied* (July 31, 2020)); *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). Further, "[w]hether a plaintiff offers direct or circumstantial evidence of discrimination . . . all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz*, 834 F.3d at 766.

A plaintiff may still prove employment discrimination utilizing the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *McDonnell Douglas* "requires a plaintiff to make a prima facie case of discrimination, at which point the burden shifts to the employer to offer a

7

nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Igasaki*, 988 F.3d at 957 (quoting *Purtue*, 963 F.3d at 601–02). However, a plaintiff is not required to use the *McDonnell Douglas* framework. *See Ortiz*, 834 F.3d at 765–66.

Johnson has availed herself of the *McDonell Douglas* framework, so the Court will analyze her claim under that framework as well. Even assuming that Johnson has enough evidence to make out a prima facie case of sex discrimination, the School has articulated legitimate, nondiscriminatory reasons for each adverse employment action: Johnson was removed from her administrative position, her administrative contract was not renewed, and she was demoted to a teaching position because Hibbard determined, based on consistent negative feedback about her and his own observations of her poor performance, that having Johnson on the central office administrative team was not in the School's best interests. And Johnson was placed on administrative leave to allow her to consider the severance offer.

So, the burden reverts to Johnson to suggest that the School's stated reasons are pretexts for sex discrimination. A federal court does not sit as a super-personnel department that second-guesses facially legitimate employment decisions. *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016). It is not the court's role to determine whether an employer's proffered reason for an adverse action was wise, fair or reasonable. *Id.* Instead, the plaintiff must demonstrate that the employer's explanation is pretextual, which requires evidence suggesting that the "proffered reason . . . [is] a lie." *Marnocha v. St. Vincent Hops. & Health Care Ctr., Inc.*, 986

8

F.3d 711, 721 (7th Cir. 2021) (citation omitted). A plaintiff may do so by identifying "'weaknesses, implausibilities, inconsistencies, or contradictions' in the employer's asserted reason from which "a reasonable person could find it unworthy of credence." *Id.* (citation omitted).

Johnson attempts to demonstrate pretext first by asserting that the School has given shifting, contradictory reasons for its adverse actions. She points to the School's response to her EEOC charge, which identified performance issues as the basis for her demotion. But poor performance is entirely consistent with the reasons given by the School when Johnson was placed on administrative leave and removed from her position as administrator. Johnson asserts that the School originally represented to her when it placed her on administrative leave in December 2017 that "she had done nothing wrong." (Pl.'s Br. 25 (citing Dec. 28, 2017 letter from Jill Britt to Martha Johnson, Ex. 19, ECF No. 113-14), ECF No. 112.) But no reasonable factfinder could find an inkling in that letter to even suggest that the School told Johnson that she "had done nothing wrong"). Johnson also asserts that Hibbard told her that he placed her on administrative leave and demoted her to "move the district forward." (Pl.'s Br. 25–26, ECF No. 112.) But moving the district forward is entirely consistent with the stated reason that Hibbard did not believe that having Johnson in the administrative position was functional, helpful, or in the School's best interest.

Next, Johnson claims that her "job performance cannot reasonably be questioned." (Pl.'s Br. 26, ECF No. 112.) The question is not whether the School's view of Johnson's performance was correct, but whether its explanation is honest. *Igasaki*,

9

988 F.3d at 958. Johnson has not presented any evidence to raise a reasonable inference that Hibbard did not honestly believe that her job performance was quite poor. Johnson may believe her performance was positive, but a plaintiff's subjective beliefs are insufficient by themselves to create a genuine issue of material fact. *Mollet v. City of Greenfield*, 926 F.3d 894, 898 (7th Cir. 2019). Johnson cannot create a triable issue by pointing to prior superintendent's view of her performance either. Johnson's "past performance is largely irrelevant." *Igasaki*, 988 F.3d at 959 (stating that "the issue is not the employee's past performance but 'whether the employee was performing well at the time of [her] termination.' . . . [P]ast positive evaluations do not guarantee future employment. Nor does such evidence, without more, show discrimination.") (quoting *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002)); *see also Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998). Johnson's disagreement with the School's perception of her performance does not mean that its perception was because of unlawful discrimination. *Igasaki*, 988 F.3d at 958.

Johnson suggests that placement on administrative leave by itself points to pretext because administrative leave was reserved for employee's who were investigated for a wrong-doing. However, the unrefuted evidence is that although administrative leave is sometimes disciplinary or investigatory, it was not in Johnson's case. (Hibbard Aff. ¶ 37, ECF No. 97-1.) Johnson complains that the School revoked her email account while she was on administrative leave, but that simply

does not suggest that the School's stated reasons for its employment actions were dishonest.

Johnson alleges that the School treated similarly situated administrators outside the protected class more favorably. She identifies the new COO who was provided better benefits and pay. The undisputed evidence establishes, however, that the COO's contract was based on his position, skills, and experience, (Hibbard Aff. ¶ 17, ECF No. 97-1), and Johnson admits that no other male, including Hibbard, had the same benefits as the COO, (Johnson Dep. 145, ECF No. 97-16).

Finally, Johnson argues there is circumstantial evidence of sex discrimination. She claims that two School Board members had "an issue with women . . . in positions of leadership" and argues that under state law, the Board is the ultimate decisionmaker in all personnel matters. (Pl.'s Br. 1, 2, 5–9, ECF No. 112.) As well, Johnson points to other lawsuits against the School asserting sex discrimination. (Pl.'s Br. 2, 8–9.) None of this reasonably suggests pretext. The undisputed evidence is that the personnel decisions regarding Johnson were Hibbard's alone; the Board did not ask and was not told the reasons for his decisions; and the Board merely approved the decisions once they were made. The mere fact that other women claimed the School discriminated against them based on sex is irrelevant and does not suggest pretext, particularly when the other women (Kimberly Jarvis and Flora Reichanadter) were employed with the School before Hibbard, the decisionmaker in Johnson's case, became superintendent in July 2017.

11

Johnson has not presented evidence to suggest that the School's legitimate, nondiscriminatory reasons for removing from her administrative position, offering severance, not renewing her administrative contract, demoting her to a teaching position, or placing her on administrative leave are pretextual. The record fails to show that the School's proffered reasons for its employment actions are reasons that a reasonable person could find "unworthy of credence." *Marnocha*, 986 F.3d at 721. Therefore, Johnson cannot establish sex discrimination under the *McDonnell Douglas* framework.

And Johnson has presented insufficient evidence to show sex discrimination under *Ortiz*. The "singular question" in a discrimination case is simply whether the evidence evaluated as a whole "would 'permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Ortiz*, 834 F.3d at 765. Like the plaintiff in *Igasaki*, Johnson points to "past wrongs purportedly probative of . . . sex discrimination," such as the allegations by Jarvis and Reichanadter. Others' claims of sex discrimination fail to show that the School took action against Johnson because of her sex. Instead, the record shows that Hibbard's personnel decisions were based on Johnson's poor performance and her sex played no part in those decisions.

No reasonable jury could find that Johnson's removal from her administrative position, severance offer, non-renewal of her administrative contract, demotion to a teaching position, or placement on administrative leave was because of her sex. Thus, the School will be granted summary judgment on her sex discrimination claim.

### C. Failure-to-Accommodate

Johnson also claims that the School failed to reasonably accommodate her disability and refused to engage in the interactive process in violation of the ADA. To prevail on a failure-to-accommodate claim, a plaintiff must prove that (1) she was a qualified individual with a disability, (2) the employer was aware of her disability, and (3) the employer failed to reasonably accommodate her disability. *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 503 (7th Cir. 2020). Under the ADA, the employee and employer should engage "in an interactive process to determine a reasonable accommodation" for the employee. *Id.* However, the "interactive process," is merely "a *means* for identifying a reasonable accommodation rather than an end in itself." *Id.* (quoting *Sansone v. Brennan*, 917 F.3d 975, 979–80 (7th Cir. 2019) (emphasis added) (citations omitted). "[T]here is no independent cause of action for breakdown of the interactive process under the ADA." *Igasaki v. Illinois Dep't of Fin. & Pro. Reg.*, 988 F.3d 948, 961 (7th Cir. 2021). An employer may be held liable only when its "failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual." *Id.* (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000) (footnote omitted)). Thus, Johnson has no claim under the ADA based on the School's alleged refusal to engage in the interactive process.

And her failure-to-accommodate claim cannot survive summary judgment either. Assuming Johnson can establish the other elements of the claim, she admits that the School accommodated her restrictions and granted her placement request. The

School is entitled to summary judgment on Johnson's ADA "interactive process" claim and failure-to-accommodate claim.

### D. Retaliation

Lastly, Johnson alleges that a jury could conclude that the Board retaliated against her for exercising her rights under the ADA and Title VII. Like a discrimination claim, the inquiry for an employment retaliation claim is: "Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?" *Igasaki v. Illinois Dep't of Fin. & Pro. Reg.*, 988 F.3d 948, 959 (7th Cir. 2021) (citation omitted). A plaintiff may establish retaliation in two ways. *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 508 (7th Cir. 2020).

Under the first approach, she can show that (1) she engaged in protected activity; (2) she suffered a materially adverse action; and (3) there was a causal link between the protected activity and adverse action. *Id.* at 508–09. Under the second approach, a plaintiff can show (1) she engaged in protected activity; (2) she suffered a materially adverse action; (3) she was meeting her employer's legitimate expectations; and (4) she was treated less favorably than similarly-situated employees who did not engage in protected activity. *Id.* at 509. If the plaintiff makes this showing, then "the burden shifts to the employer to articulate some legitimate, nonretaliatory reason for its action." *Id.* (quotation omitted). If the employer carries this burden, then the plaintiff must establish that the employer's stated reason is pretextual. *Id.* An

"adverse action" for purposes of a retaliation claim means an action that "would dissuade a reasonable employee from engaging in the protected activity." *Id.*

Johnson's retaliation claims cannot survive summary judgment under either approach. The claims fail under the first approach because the evidence fails to suggest a causal link between any protected activity and any adverse action against Johnson. No reasonable factfinder could conclude that Johnson's removal from her administrative position, severance offer, non-renewal of her administrative contract, demotion to a teaching position, or placement on administrative leave had any connection to her complaints about discrimination. The evidence is unrefuted that Johnson was placed on administrative leave to allow her to consider the severance offer. The record establishes that each of the other actions were taken because Hibbard determined based on his own observations and consistent feedback from numerous others that including Johnson on the central office administrative team was not in the School's best interests. The retaliation claims fail under the second approach because the Court has determined that the School has articulated legitimate, nondiscriminatory reasons for each employment action, and Johnson has insufficient evidence to raise a triable issue as to pretext. Therefore, the School will be granted summary judgment on Johnson's Title VII and ADA retaliation claims.

## Conclusion

The School's Motion for Summary Judgment, (ECF No. 97), is **granted**, and final judgment will be entered in favor of Defendant on all of Plaintiff's claims.

**SO ORDERED.**

Date: 11/24/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to registered counsel